UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MARTIN SALDANA-VERDIN,

      Petitioner,

vs.

NEVADA ATTORNEY GENERAL, *et al.*,

      Respondents.

3:07-cv-0276-RLH-RAM

**ORDER**

This action is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by petitioner Martin Saldana-Verdin, a Nevada prisoner. The action comes before the Court with respect to its merits. The Court will deny the petition.

**I. Facts and Procedural Background**

Petitioner was charged on March 6, 2003, in the Second Judicial District Court for Washoe County, with lewdness with a child under the age of fourteen years (count I), and two counts of sexual assault on a child (counts II and III). Exhibit 4.[1] Petitioner entered into a guilty plea to count III on March 14, 2003. Exhibits 5 and 6. The state agreed to dismiss the other charges, and both parties were free to argue for any appropriate sentence. *Id.* The state district court canvassed petitioner with respect to the plea, and accepted petitioner's guilty plea. Exhibit 6. Petitioner was

---

[1] The exhibits cited in this order in the form "Exhibit ___," are those filed by respondents in support of their motion to dismiss, and are located in the record at docket #18.

1  sentenced to life imprisonment with parole eligibility in twenty years. Exhibits 7 and 8. A judgment
2  of conviction was entered on April 29, 2003. *Id.*
3        Petitioner appealed, and the Nevada Supreme Court affirmed the judgment of
4  conviction   Exhibits 10 and 22. Remittitur issued on January 16, 2004. Exhibit 24. Petitioner filed
5  a state habeas corpus petition on March 16, 2004, alleging three grounds for relief. Exhibit 27. The
6  state district court appointed counsel to represent petitioner and counsel filed a supplemental
7  petition, expounding on petitioner's first claim. Exhibits 30 and 31. The state district court
8  summarily dismissed the petition, finding the claims were without merit as they were repelled by the
9  record. Exhibit 32.
10       Petitioner appealed the state district court's summary dismissal of his habeas corpus
11 petition, arguing that the state district court erred in dismissing the petition without holding an
12 evidentiary hearing. Exhibits 36 and 44. The state filed a confession of error, noting that the state
13 district court did err in summarily dismissing the petition without holding an evidentiary hearing.
14 Exhibit 45. The Nevada Supreme Court reversed the lower court's summary dismissal of the
15 petition, and remanded the case with directions that the district court hold an evidentiary hearing.
16 Exhibit 48. Remittitur issued on September 13, 2005. Exhibit 50.
17       The state district court held an evidentiary hearing on January 26, 2006. Exhibit 53.
18 The court then denied petitioner's claims. Exhibits 53 and 64. Petitioner appealed, and the Nevada
19 Supreme Court affirmed the lower court's denial of the habeas corpus petition. Exhibits 60 and 75.
20 Remittitur issued on October 17, 2006. Exhibit 77.
21       Petitioner filed a federal habeas corpus petition with this court (docket #6).
22 Respondents moved to dismiss the petition (docket #17) and this Court granted the motion to dismiss
23 in part on April 23, 2009, finding grounds one and three were unexhausted (docket #24). Petitioner
24 chose to abandon those grounds (docket #25). Respondents have now answered the remaining
25 grounds for relief (docket #28) and petitioner has filed a traverse (docket #29).
26 ///

## II. Federal Habeas Corpus Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "'if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases'" or "'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent.'" *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court precedent "'if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The unreasonable application clause "requires the state court decision to be more than incorrect or erroneous"; the state court's application of clearly established law must be objectively unreasonable. *Id*. (*quoting Williams*, 529

U.S. at 409).  *See also Ramirez v. Castro*, 365 F.3d 755 (9th Cir. 2004).

In determining whether a state court decision is contrary to, or an unreasonable application of, federal law, this Court looks to a state court's last reasoned decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Plumlee v. Masto*, 512 F.3d 1204, 1209-10 (9th Cir. 2008) (en banc).

Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

**III. Discussion**

In his remaining ground for relief, ground two, petitioner alleges that his guilty plea was not knowingly, intelligently, or voluntarily entered into.  Petitioner states that trial counsel and the district attorney promised him or guaranteed that he would receive a five to twenty year sentence if he signed the plea agreement.  Furthermore, petitioner alleges that he was also told that there was the possibility of probation.  Petitioner then contends that his interpreter, interpreter Brena, told him that the five to twenty year agreement was a "good deal" and that he would be able to see his family after serving a minimum of five years in prison.  Petitioner also states that Brena told him that there was a possibility of probation.

To satisfy the United States Constitution, a guilty plea must be voluntary and intelligent.  *See*, *e.g.*, *Hill v. Lockhart*, 474 U.S. 52 (1985); *Boykin v. Alabama*, 395 U.S. 238 (1969).  If a petitioner challenges a guilty plea, a court must determine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  The court looks to what a defendant reasonably understood at the time of the plea.  *U.S. v. Quan*, 789 F.2d 711, 713 (9th Cir. 1986).  "A habeas petitioner bears the burden of establishing that his guilty plea was not voluntary and knowing. *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006) (citations omitted).  Furthermore, "[a] plea is voluntary [and intelligent] only if it is entered by one fully aware of the direct consequences of his

4

plea . . . ." *Little* , 449 F.3d at 1080 (citing *United States v. Amador-Leal*, 276 F.3d 511, 514 (9th Cir. 2002) (citation and internal quotations omitted))

Petitioner entered into a guilty plea on March 14, 2003, to one count of sexual assault on a child. Exhibit 5.  The plea agreement stated that petitioner understood that he could be sentenced to life imprisonment with parole eligibility in twenty years, or to a definite term of five to twenty years in prison, and that he was not eligible for probation. *Id.*  The agreement noted that the state was free to argue for an appropriate sentence. *Id.*  Petitioner signed the agreement. *Id.*  At the plea hearing it was noted that both parties were free to argue for any sentence available, and that probation was not available. Exhibit 6, T 2-3.  Petitioner told the court that he understood the negotiations. *Id.* at T 3-4.  Moreover, petitioner stated that he had not been threatened or induced into accepting a plea, had not been promised anything other than what was contained in the plea agreement, and was entering his plea freely and voluntarily. *Id.* at T 5.  The parties reiterated that petitioner was facing a sentence of either life imprisonment with parole eligibility in twenty years or a term of years of five to twenty. *Id.* at T 7-8.

The state district court held an evidentiary hearing on petitioner's state post-conviction petition on January 26, 2006. Exhibit 53.  At the hearing petitioner testified that someone read him the plea agreement in Spanish, and the interpreter told him that the punishment would be five to twenty years. *Id.* at T 6.  Petitioner testified that the interpreter never told him he could receive life imprisonment. *Id*. at T 7.  Petitioner stated after he signed the plea agreement he was told that the judge could sentence him to life imprisonment. *Id.*  Petitioner did not tell the judge that his attorney had promised him a five to twenty year sentence because he was confused. *Id.* at T 8.  Petitioner admitted that he was also told about the possibility of a life sentence by the trial judge, and he entered into a guilty plea anyway. *Id.*

Orlando Yaran, an interpreter, also testified at the hearing. *Id*. at T 14.  Yaran did not really remember the petitioner. *Id.*  Yaran testified that his standard practice is to interpret a plea agreement word for word, line by line. *Id.*  Yaran also interprets every word spoken by the judge.

*Id.*  After viewing the original plea agreement Yaran stated that he had interpreted it as his signature was on the document.  *Id.* at T 18.

Finally, trial counsel Malone testified.  *Id.* at T 19.  Malone told the court that he explained to petitioner that he faced a sentence of life imprisonment with parole eligibility in twenty years or a term of five to twenty years.  *Id.* at T 20.  Malone did not recall whether the petitioner had questions regarding the plea agreement, but it was his practice to answer questions and ask for additional time if those questions could not be answered.  *Id.* at T 21.  Malone believed that the female interpreter that petitioner referred to was interpreter Brena who contracted with his office to interpret preliminary hearings and out-of-court conversations.  *Id.* at T 23.  Malone testified that he never promised petitioner a five to twenty year sentence.  *Id.*  The trial court then denied the state habeas corpus petition.  Exhibit 64.

On appeal, the Nevada Supreme Court affirmed the state district court's denial of the habeas corpus petition, stating:

> In his petition, appellant contended that his plea was entered involuntarily and unknowingly.  A guilty plea is presumptively valid, and appellant carries the burden of establishing that his plea was not entered knowingly and intelligently. [fn 3: *Bryant v. State*, 102 Nev. 268, 272, 721 P.2d 364, 368 (1986); *see also Hubbard v. State*, 110 Nev. 671, 877 P.2d 519 (1994).] In determining the validity of a guilty plea, this court looks to the totality of the circumstances. [fn 4: *State v. Freese*, 116 Nev. 1097, 13 P.3d 442 (2000); *Bryant*, 102 Nev. 268, 721 P.2d 364.] We will not reverse a district court's determination concerning the validity of a plea absent a clear abuse of discretion. [fn 5: *Hubbard*, 110 Nev. at 675, 877 P.2d at 521.]
>
> First, appellant contended that his translator failed to properly translate the plea agreement and the consequences of his plea.  Specifically, appellant claimed that the translator failed to inform him of maximum sentence he was facing, and because of the translator's failure, appellant understood his maximum sentence to be five to twenty years, and thus, resulted in his guilty plea be involuntarily and unknowingly entered.
>
> Appellant failed to demonstrate that his plea was involuntarily or unknowingly entered.  Appellant's translator testified during the evidentiary hearing that, although he did not have an independent recollection of translating for appellant, it was his standard practice to read every word in a document to the individual.  Additionally, the translator testified that when he serves as an interpreter during change-of-plea hearings, he interprets every word spoken by the Court or the attorneys, and is sworn

6

> under oath to carry out that duty. Appellant acknowledged during his plea canvass that he understood the maximum possible term of years he was facing if he pleaded guilty. The plea agreement, which was read to appellant and which appellant signed, stated that the maximum term of imprisonment was life in prison with parole eligibility after a minimum of twenty years had been served. Appellant's mere subjective belief as to his potential sentence, or hope of leniency, unsupported by a promise from State [sic] or indication by the court, is insufficient to invalidate his guilty plea as involuntary or unknowing. [fn 6: *See Rouse v. State*, 91 Nev. 677, 679, 541 P.2d 643, 644 (1975).] The totality of the circumstances indicated that appellant entered his guilty plea voluntarily and knowingly. Thus, the district court did not err in denying this claim.

Exhibit 75. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. A state court's factual determination may not be overturned unless this court cannot "reasonably conclude that the finding is supported by the record. *Cook v. Schriro*, 516 U.S. 802, 816 (9th Cir. 2008); *Miller-El v. Cockrell*, 537 U.S. 32 (2003) (stating "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary" and a decision made by a state court based upon a factual determination "will not be overturned...unless objectively unreasonable in light of the evidence presented in the state-court proceeding"). The petitioner has the burden of proof to rebut the presumption of correctness. 28 U.S.C. § 2254(e)(1).

The factual findings made by the state court are presumed correct. The state court findings are reasonably supported by the record. Petitioner signed a plea agreement that stated that he could receive *either* a five to twenty year sentence *or* a sentence of life imprisonment with parole eligibility in twenty years. Moreover, the agreement stated that he was not eligible for probation. At the plea canvass the court informed petitioner of the potential sentences and told him he was not eligible for probation. Furthermore, at the evidentiary hearing the testimony indicated that petitioner was properly informed that he could receive a life sentence, and that the state and defense counsel had not promised him a five to twenty year sentence or probation. As there is no indication that petitioner's plea was involuntarily, unintelligently, or unknowingly entered, the Court will deny ground two of the petition.

### IV. Certificate of Appealability

In order to proceed with an appeal from this court, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.* The Supreme Court has held that a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Supreme Court further illuminated the standard for issuance of a certificate of appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003). The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Id.* at 1040 (quoting *Slack*, 529 U.S. at 484).

The Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appeal, and the Court determines that none meet that standard. Accordingly, the Court will deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that the petition for writ of habeas corpus (docket #6) is **DENIED**.

**IT IS FURTHER ORDERED** that the clerk shall **ENTER JUDGMENT ACCORDINGLY**.

///

///

///

///

1   **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**
2   **APPEALABILITY**.
3
4   Dated this ___3rd___ day of November, 2009.
5
6
7   _____
8   CHIEF UNITED STATES DISTRICT JUDGE